UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND


NORMAN GRAICHEN
SHARON L. MCNULTY GRAICHEN


　　VS                                          C.A. NO.:  16-153S

WELLS FARGO BANK, N.A.,
ALIAS AND JOHN DOE, ALIAS
AND HARMON LAW OFFICES, PC

## MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS BY HARMON LAW OFFICES, P.C.

## INTRODUCTION


This matter is before the Court on Harmon Law Offices, PC's ("Harmon") Motion for Judgment on the Pleadings.   On March 1, 2016 Plaintiffs filed a complaint against Wells Fargo Bank, N.A. and Harmon Law Offices, P.C., The allegations against Harmon are it violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e and 1692 f(6).  A review of the travel of the case, the pleadings and the relevant case law mandate that the Motion for Judgment on the Pleadings is not well founded and should be denied. The facts of this case as alleged in the pleadings are quite concise and recite plausible allegations.  On March 2, 2015, Harmon Law Offices, P.C. ("Harmon") sent the Plaintiffs a letter pursuant to R.I.G.L. § 34-27-4, purporting to schedule a foreclosure sale on their home on

April 23, 2015.  The sale was advertised three times and Harmon hired an

auctioneer who conducted a purported foreclosure sale.  This auctioneer was

Commonwealth Auction Associates, Inc. ("Commonwealth"), a corporate affiliate

of Harmon, with the same business address as Harmon of 150 California Street,

Newton, Massachusetts, with the same registered agent, Mark P. Harmon and

which had two directors, Mark P. Harmon and Andrew S. Harmon, who was the

only officers of Harmon.  On April 23, 2015 a purported sale occurred and the

property was claimed to have been sold to an individual named Robert Primeau,

who immediately commenced communications with the Plaintiffs in an attempt to

cause them to move out of their home. As a result, Plaintiffs first hired one

attorney, Peter Iascone and then attorney John B. Ennis regarding the matter, both

of whom communicated with Harmon and Wells Fargo.  At no time was a

foreclosure deed recorded.

## THE PLEADINGS ESTABLISH LIABILITY AGAINST HARMON PURSUANT TO THE FDCPA

The Plaintiffs alleged specific facts in the complaint against Harmon.  They

made the following allegations, which if true would establish liability against

Harmon.  However Harmon refused to answer certain allegations or denied certain

allegations.  These allegations are as follows:

6.    Pursuant to the terms of the mortgage, a Notice of a Foreclosure sale could not be commenced without the Lender first sending to the Plaintiffs a Notice of Default pursuant to the terms of the mortgage.

6.    **Harmon Answer**:  This paragraph states a legal conclusion to which no response is required.  Answering further, the referenced mortgage speaks for itself.

7.    Neither Wells Fargo, Freddie Mac nor any entity acting on their behalf sent the Plaintiffs a Default Notice pursuant to the terms of the mortgage.

7.    **Harmon Answer**:  Denied.

8.    Harmon and Wells Fargo, though Harmon threatened to and did publish advertisements of a foreclosure sale of Plaintiffs' home.

8.    **Harmon Answer**: Harmon admits that advertisement of the April 23, 2015 foreclosure sale was published; otherwise the allegations are denied.

9.    Harmon and Wells Fargo, though Harmon threatened to and did schedule an auction of the Plaintiffs' property on April 23, 2015.

9.    **Harmon Answer**: Harmon admits that a foreclosure auction for April 23, 2015 was scheduled; otherwise the allegations are denied.

10.    Harmon and Wells Fargo, though Harmon conducted a purported foreclosure sale of the Plaintiffs' home on April 23, 2015 and purported to sell the Plaintiffs' home to a third party.

10.    **Harmon Answer**: Harmon admits that a foreclosure auction was conducted on April 23, 2015 and that a third party was the high bidder at that auction; otherwise the allegations are denied.  Answering further, the foreclosure sale was not completed and no foreclosure deed was transferred to the third party high bidder.

14.    Harmon regularly collects debts for other entities.  In fact it regularly references itself as a Debt Collector.  The vast majority of the business of Harmon is as a Debt Collector.

14.    **Harmon Answer**: Harmon denies the allegations.

15.     Harmon and Wells Fargo since March 1, 2014 have committed several violations of the FDCPA and are liable to the Plaintiffs for compensatory damages, statutory damages, and attorney fees and costs for violations.

15.     **Harmon Answer**: Harmon denies the allegations.

16.     Harmon and Wells Fargo have used multiple followings unfair and unconscionable means to collect or attempt to collect a debt against the Plaintiffs.

16.     **Harmon Answer**: Harmon denies the allegations.

17.     Harmon on behalf of Wells Fargo and Wells Fargo, through Harmon threatened to commence a non-judicial foreclosure to effect dispossession of the Plaintiffs of their property even though  pursuant to the terms of the mortgage and the failure to send a default letter, Wells Fargo and Freddie Mac lacked the  present right to possession of the property claimed as collateral through an enforceable security interest.  They also threatened to take legal action that they were not authorized to take. Specifically, Harmon and Wells Fargo committed the following violations in this regard:

   a.     On about March 1, 2015, Wells Fargo on behalf of Freddie Mac had sent, through its attorney Harmon, four Notices of Foreclosure to Plaintiffs. Two of these were sent by certified mail and two were sent by regular mail.  This notice purported to schedule a foreclosure sale of the plaintiff's property, even though it had no contractual or statutory ability to conduct such a sale.

   b.     Harmon and Wells Fargo have caused the publication of  foreclosure advertisements of a foreclosure sale of Plaintiffs' home.

   c.     Harmon and Wells Fargo hired and authorized an auctioneer to appear at the Plaintiffs' home on April 23, 2015 to conduct a foreclosure sale.

   d.     On every monthly statement sent to the Plaintiffs from March 1, 2015, Defendant, Wells Fargo made a false statement as to the amount of the debt of the Plaintiffs in an attempt to collect a debt.

17.     **Harmon Answer**: Harmon denies the allegations, including all subparts.

18.     The facts alleged in this complaint establish that Harmon and Wells Fargo by threatening to foreclose on Plaintiffs' property violated 15 USC 1692e(5) by threatening to  take an action that could not be legally taken. They could not commence a non-judicial foreclosure without sending a default letter pursuant to the terms of the mortgage.

18.     **Harmon Answer**: Harmon denies the allegations.

19.     Each action of Harmon and Wells Fargo described above constitutes a separate violation of the FDCPA for which Harmon and Wells Fargo are liable.

19.     **Harmon Answer**: Harmon denies the allegations.

21.     The Plaintiffs have incurred actual damages in regard to this action:

a.      They have incurred costs for gasoline to visit their attorney on at least six occasions, driving to their attorney's office for a round trip totaling 50.18 miles.  The IRS standard mileage allowance provides for .56 per mile.

b.      They have incurred attorney fees and costs in order to obtain legal assistance to rescind the purported foreclosure and to undo the illegal actions of the Defendants. Their fee agreement with their attorney provides that they will be responsible for legal fees expenses incurred in regard to this action.  They have agreed to pay legal fees at the rate of $400.00 per hour or out of Court legal work and $450.00 per hour for in Court legal work.

c.      They have incurred emotional distress and anxiety when they were advised by the purported purchaser at the foreclosure sale that they were required to leave their home.

d.      They have incurred legal fees and costs for the prosecution of this action. Their fee agreement with their attorney provides that they will be responsible for legal fees expenses incurred in regard to this action. They have agreed to pay legal fees at the rate of $400.00 per hour or out of Court legal work and $450.00 per hour for in Court legal work.

21.     **Harmon Answer**: Harmon denies the allegations, including all subparts.

These denials and equivocal answers establish that there is a factual dispute which precludes granting the Motion for Judgment on the Pleadings. Plaintiffs have alleged that Harmon is a debt collector and in fact all of its communications to the Plaintiffs has indicated that it is a debt collector.  In its original communication to the Plaintiffs, referenced in this  menorandum and which will be referenced in a proposed amended claim, it stated that it was a debt collector. Plaintiffs have alleged in paragraph 14 that Harmon regularly collects debts for other entities and that the vast majority of the business of Harmon is as a Debt Collector. Harmon denied that specific allegation in paragraph 14. Plaintiffs also are prepared to file an amended complaint to allege that the vast majority of the business of Harmon is as a Debt Collector, and in that it utilizes a computer software system whereby it is has acted as a default servicer provider for loan servicers such as Wells Fargo and seeks to collect payments on past due mortgages for loan servicers such as Wells Fargo.  They also will amend the complaint to plausibly allege Harmon has sought to collect payments on behalf of Wells Fargo from Plaintiffs for past due payments in regard to their mortgage.  It was acting on behalf of Wells Fargo Home Mortgage and sent collection letters to the Plaintiffs on the following dates:

January 15, 2014 (Exhibit A)

August 4, 2014 (Exhibit B)

March 2, 2015 (Exhibit C)

In the first two of these letters Harmon advised the Plaintiffs that they owed a particular amount pursuant to the terms of the mortgage.  In fact in the January 15, 2014 and August 4, 2014 letters Harmon indicated that it was accelerating the mortgage on behalf of Federal Home Loan Mortgage Corporation.  It also advised the Plaintiffs in the August 4, 2014 letters and the March 2, 2015 that it had a website located at www.hlopayoff.com whereby the Plaintiffs could obtain a payoff or reinstatement statement to payoff or reinstate the mortgage loan. A copy of this website and all connected webpages is attached as Exhibit D to this motion. These documents clearly indicate that Harmon regularly sought to collect a debt on behalf of mortgagees by providing payoff and reinstatement amounts.   If necessary, Plaintiffs request that they be allowed to file an amended complaint to allege these specific facts in order to make more specific allegations.

Another allegation which Plaintiffs are prepared to make in an amended complaint is that the phone number provided in Exhibits A-C, 617-558-0898 is a number, which is answered twenty four hours per day. The message states "a portion of our practice to collect debts and any information will be used for that purpose". In addition, Plaintiff is prepared to plausibly allege in an amended complaint that Harmon derives almost its entire revenue from collecting debts for

7

loan servicers, whether in an attempt to collect from mortgagees, by filing claims in Bankruptcy for mortgagees and by seeking damages for use and occupancy in post foreclosure eviction actions.

In each of these letters Harmon, claimed that it was acting on behalf of Wells Fargo Home Mortgage, which it claimed was the servicer for the owner of the Plaintiffs' mortgage. In these letters, Harmon provided a portion of the information required to be provided by debt collectors in an initial communication as required by the provisions of 15 U.S.C. §1692g. In the first of these letters, Harmon indicated that the sum of $177,036.70 as due on the loan, which it claimed that Wells Fargo Home Mortgage had accelerated the mortgage loan. A similar letter was sent on August 14, 2014 in which the same language was included and indicated that the amount due was $204,800.00. However none of these letters identified the name of the actual creditor, to whom the debt was owed as required by 15 U.S.C. §1692. The March 2, 2015 letter did not state an amount, but provided the website to obtain a payoff or reinstatement balance. The purpose of the letters was to induce the Plaintiffs to pay past due payments to Wells Fargo Home Mortgage to avoid a foreclosure sale. The letters prior to March 1, 2015 have been provided to indicate the manner in which Harmon operates as a debt collector on a regular basis for loan servicers in regard to mortgage foreclosures.

The terms of Plaintiffs' mortgage provided that prior to commencing any non-judicial foreclosure pursuant to R.I.G.L. 34-27-4, the lender was required to send a Notice of Default to the Plaintiffs. The Pleadings in this case clearly establish that the Plaintiffs were not provided such a Notice. Plaintiff has sufficiently pleaded facts that a condition precedent for the exercise of the statutory power of sale as established by the mortgage had not been met. Plaintiffs are prepared to file an amended complaint alleging that the provisions of paragraph 22 of their mortgage were not complied with and that a valid default notice was not sent to them, resulting in the initial foreclosure notice to be invalid. The lender failed to comply with the terms of the mortgage when it conducted the purported foreclosure.  Instead, Wells Fargo using the fictitious name of Wells Fargo Home Mortgage sent a defective default letter to the Defendant.  Paragraph 22 of the mortgage provided that **before any alleged acceleration of the loan was declared,** the **Lender** was required to specify:

a.     the default;

b.     the action required to cure the default, stating a date, not less than 30 days from the date the default must be cured;

    c.     that failure to cure the default on or before the date specified in the

Notice **may result in the acceleration** and the right to bring a court action to asset

the non-existence of a default of Borrower to acceleration and sale.

     Paragraph 22 of the Plaintiffs mortgage, which contains conditions for

theexercise of the statutory power of sale, reads as follows:

> Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

> If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in Section 15. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale,

including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

Specifically, the provisions in paragraph 22 of the mortgage were a condition precedent to the exercise of the power of sale of the mortgage.  There was no strict compliance with the terms of the mortgage to exercise the statutory power of sale as indicated above. No default letter was sent to Plaintiffs by the Lender in conformity with the terms of the Mortgage. Thus any alleged subsequent notice of foreclosure letter was void and invalid due to the failure of the lender to comply with the terms of the mortgage.  Since no default letter, consistent with the terms of the mortgage, was sent, no acceleration and sale could be declared by any entity.

The only purported default notice sent to the Plaintiffs was dated July 16, 2013 and is attached to this Memorandum as Exhibit  E.  This letter was not a default notice as required by the terms of the mortgage. A virtually identical letter in regard to this issue was analyzed Judge Finkle of the Rhode Island Bankruptcy Court in the case of *In Re Demers*, 511 B.R. 233 (Bankr R.I., 2014). In *Demers,* the Court reviewed an objection to a Proof of Claim filed by Wells Fargo through its servicing name of America's Servicing Company.  A notice similar to this notice was sent to the Debtor prior to a foreclosure, which was stopped by the Debtor's Chapter 13 bankruptcy filing.  The Court found that strict compliance with

Paragraph 22 of the mortgage was a condition precedent to acceleration and

exercise of the statutory power of sale under Rhode Island law.  The Court held:

> Reading the Note and Mortgage as an integrated contract, I find the loan
> agreement between Ms. Demers and ASC is unambiguous and ASC's
> compliance with Mtg. Paragraph 22 is a condition precedent to its right to
> accelerate the Note and pursue its remedy of foreclosure against the
> Property. That paragraph, in plain and ordinary terms, states that prior to
> accelerating the Note ASC is required to give Ms. Demers notice of "the
> right to bring a court action to assert the non-existence of a default or any
> other defense of Borrower to acceleration and sale." The Notice without
> question did not inform Ms. Demers that she had a right to bring an action in
> court. Quite clearly the Notice did not comply with this prerequisite.

> Even so, if I were to determine any ambiguity in a contract "must be
> construed against the drafter of the document," in this case ASC (or its
> predecessor-in-interest). _Haviland_, 45 A.3d at 1260 ( _quoting  Fryzel,_ 385
> A.2d at 666-67). Furthermore, "virtually every contract contains an implied
> covenant of good faith and fair dealing between the parties." _Dovenmuehle_
> _Mortg., Inc. v. Antonelli,_ 790 A.2d 1113, 1115 (R.I.2002). I see no reason
> this loan transaction should be exempted from this general rule. Indeed, in a
> transaction such as this between an individual homebuyer and a mortgage
> lender, there is an imbalance of power such that the more powerful and
> sophisticated party, ASC, must be held to this standard of good faith and fair
> dealing . . . Notice provisions in mortgage documents usually require default
> notices to contain specific information, which serves a very clear and
> specific purpose; it informs mortgagors of their rights so that they may act to
> protect them. Therefore, when the terms of the note and mortgage require
> notice of default, proper notice is a condition precedent to an action for
> foreclosure.

The Court concluded by holding that:

For unexplained reasons, the Notice sent by ASC upon Ms. Demers' 2012 default
deviated from these prior notices and omitted this contractually mandated notice
provision. This defect resulted in the invalidity of the foreclosure process ASC
pursued and precludes recovery of its associated costs.

Thus pursuant to the Bankruptcy Court's analysis, this paragraph 22 notice was defective, rendering the foreclosure void.

The Massachusetts Supreme Judicial Court  analyzed this type of notice in exactly the same manner.  In the case of *Pinti v. Emigrant Mortgage Company*, No. SJC-11742 (Ma., July 17, 2015), the Court invalidated a foreclosure where there was not strict compliance with the provisions of paragraph 22.  The Court commenced by viewing the extraordinary power that a mortgagee possessed when non-judicial foreclosure commenced with no judicial intervention:

> This court has recently reemphasized the point that in light of "the substantial power that the statutory scheme affords to a [mortgagee] to foreclose without immediate judicial oversight, we adhere to the familiar rule that `one who sells under a power [of sale] must follow strictly its terms'"; the failure to do so results in "no valid execution of the power, and the sale is wholly void."  Ibanez, 458 Mass. at 646, quoting  Moore v. Dick, 187 Mass. 207, 211 (1905). See  Pryor v. Baker, 133 Mass. 459, 460 (1882)("The exercise of a power to sell by a mortgagee is always carefully watched, and is to be exercised with careful regard to the interests of the mortgagor"). This is true with respect to terms that are connected to the power of sale contained in the mortgage instrument itself, [10] and to terms contained in § 21, the statutory power of sale, or in one of "the statutes relating to the foreclosure of mortgages by the exercise of a power of sale" to which § 21 refers.

It then proceeded to analyze the nature of the Paragraph 22 notice:

> Insofar as the plaintiffs' mortgage is concerned, paragraph 22 begins by requiring notice of default to be given prior to any acceleration of the sums secured by the mortgage; then specifically prescribes the contents of the notice of default; and then provides that, if the default is not cured before the date specified in the notice, the mortgagee may invoke the statutory power of sale (as well as pursue other remedies). As the paragraph is written,

> therefore, the sending of the prescribed notice of default is essentially a prerequisite to use of the mortgage's power of sale, because the power of sale may be invoked only if the default is not cured within the time specified in the notice of default. In this regard, we agree with the plaintiffs that the "terms of the mortgage" with which strict compliance is required — both as a matter of common law under this court's decisions and under § 21 [15] — include not only the provisions in paragraph 22 relating to the foreclosure sale itself, but also the provisions requiring and prescribing the preforeclosure notice of default. See Foster, Hall & Adams Co., 213 Mass. at 322-324.

The Court then concluded by holding:

> this court's decisions about mortgage terms indicate that by structure and content, the notice of default required to be given under paragraph 22 is integrally connected, and operates as a prerequisite, to the proper exercise of the mortgage instrument's power of sale. Emigrant's strict compliance with the notice of default required by paragraph 22 was necessary in order for the foreclosure sale to be valid; Emigrant's failure to strictly comply rendered the sale void.

Thus the *Pinti* case supports Plaintiffs' position that the notice was void and defective because it did not substantially comply with the terms of the mortgage. The use of the term "we will proceed with acceleration" rather than "may be accelerated rendered this notice void and the subsequent foreclosure attempt action violated 15 U.S.C. §1692e and 1692 f(6). The violation consisted in the failure to advise the Plaintiffs that they had a right to bring a Court action.  Thus was a defective notice, exactly as in *Demers*.

Another recent case, which is appicable to this case  is *Paiva v. Bank of New York Mellon,* 14-cv-14531 D. MA, August 11, 2015. In *Paiva*, the Plaintiff filed a claim that the foreclosure was void due to the fact that the entity which provided

the default notice was Countrywide, which was not the lender, which was the entity, which had been assigned the mortgage. The Court agreed holding:

> The language of paragraph 22 is clear and unequivocal as to who must give the required notice of default to the borrower: "Lender" must do so. The Court agrees with *Paiva* that Countrywide's notice of default did not strictly comply with paragraph 22 of the mortgage, as required under the statutory power of sale and under the Massachusetts Supreme Judicial Court's ("SJC") case law. See G.L. c. 183, § 21 (requiring a foreclosing bank to "comply with the terms of the mortgage"); *U.S. Bank Nat. Ass'n v. Ibanez*, 458 Mass. 637, 647 (2011) (the terms of the power of sale, G.L. c. 183, § 21, must be strictly adhered to); see also *Pinti v. Emigrant Mortgage Company, Inc*., 33 N.E.3d 1213, 1226 (2015) (strict compliance with the notice of default required by paragraph 22 is necessary in order for a foreclosure sale to be valid). Paragraph 22 specifically states that "Lender shall give notice to Borrower. . . ." Significantly, it does not say that "Lender or the servicer of the loan shall give notice to Borrower. . . ." Nor is the term "Lender" defined in the mortgage to include the servicer of the loan. Rather, the mortgage defines "Lender" only as "Countrywide Home Loans, Inc." [Dkt. 19-1, at 6.] As discussed above, although Countrywide was the original lender under the mortgage, the parties agree that by the time Countrywide sent the notice of default to *Paiva*, Countrywide had assigned its interest to BONYM, which thereby became the lender. Thus, strictly construing paragraph 22 of the mortgage, BONYM, and not Countryside, had to send the notice of default to *Paiva.*

A similar case resulted in the same result in the Virginia Supreme Court case of  *Bayview Loan Servicing v. Simmons*, 654 S.E.2d 898 (V.A., 2008). In that case, the Virginia Supreme Court considered the same issue and held for the homeowner reversed a foreclosure:

> In Paragraph 17 of the Deed of Trust, the parties agreed no right of acceleration would be in existence to exercise (in other words, that no such right would have accrued to Bayview) until the condition precedent of

providing the pre-acceleration notice had been satisfied. That condition precedent required a notice by personal delivery or certified mail specifying:

(1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property.

As noted above, this required notice was not given and thus the condition precedent to Bayview's right of acceleration was never met. Because Bayview did not comply with the specific condition precedent under the Deed of Trust, prior to the notice of foreclosure sale by Specialized, Bayview had not acquired the right to accelerate payment under the terms of the Deed of Trust. Thus, Specialized's June 28, 2005, letter could exercise no right of acceleration because no such right had then accrued to Bayview.

As in all of these cases, the defective paragraph 22 notice rendered the Notice of foreclosure void.

Thus despite the clear nature of the terms of the mortgage,  Harmon,  commenced certain communications with the Plaintiffs in order to collect payment of the mortgage purportedly on behalf of its client, Wells Fargo Home Mortgage. The pleadings indicate that this conduct violated 15 USC 1692e  and 1692f(6).

The Defendant has cited *Pimental v Wells Fargo Bank*  D.R.I. (14-494S , 2016). However this case is not applicable to the present case. In *Pimental*, the Plaintiff had entered into a settlement agreement with the Plaintiff who had abandoned the property in 2012. Subsequently in a complaint filed with this Court the Plaintiffs had made the following allegations as to Harmon:

45. In late October or early November 2014, Harmon sent the Plaintiffs letters asserting the Plaintiffs still owed the Debt and informing them that Harmon might institute foreclosure proceedings against them.

46. Harmon informed the Plaintiffs it would publicize the foreclosure proceedings in a newspaper.

47. The Plaintiff did not owe the Debt at any time in 2014.

48. ASC's attempts within the prior year to collect the Debt caused the Plaintiffs severe emotional distress.

49. Harmon's attempt to collect the Debt, and the threat to publicize the Debt in a newspaper, caused the Plaintiffs severe emotional distress.

These allegations were quite different from the allegations in the present

case and thus *Pimentel* can be distinguished.

The first base of liability pursuant to the FDCPA alleges a violation of

15 USC 1692e(5):

The threat to take any action that cannot legally be taken or that is not intended to be taken.

In this case, Harmon threatened to take legal action that it could not legally take

due to the failure to send the Plaintiffs a default notice pursuant to the terms of the

mortgage. In this case, Harmon sent Plaintiffs an acceleration notice and in fact

purported to conduct a foreclosure sale on April 23, 2015 as alleged in the

complaint.  Thus on its face, these notices violated the provisions of the FDCPA,

section 1692e(5) as they were sent without a prior default notice as required by the

terms of the mortgage.   The proposed action could not be legally taken and thus as pleaded was a violation of 1692e.

Harmon's conduct in transmitting the R.I.G.L. § 34-27-4 notices to the Plaintiffs also violated another provision of the FDCPA.  Section 1692f(6) provides that this notice was a violation of the FDCPA in the case of a debt collector, such as Harmon:

**(6)**     Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—

**(A)** there is no present right to possession of the property claimed as collateral through an enforceable security interest;

**(B)** there is no present intention to take possession of the property; or

**(C)** the property is exempt by law from such dispossession or disablement.

A review of the pleadings in the complaint,  the terms of the mortgage and the exhibits indicates that until a proper default notice  was mailed to the Plaintiffs, Freddie Mac nor Wells Fargo did not have a present right to possession of the property claimed as collateral through an enforceable security interest.  Thus neither Wells Fargo or Freddie Mac possessed the right to commence a non-judicial foreclosure  on March 2, 2015 The language of the mortgage is quite clear as to the obligation of the lender to send the Plaintiffs a default letter with specific language, which was a precondition to acceleration and sale.   Thus the actions of Harmon constituted a violation of this provision of the FDCPA as pleaded in the

complaint. This aspect of the violation was compounded when Harmon advertised their property for sale three times in a newspaper and hired an auctioneer who claimed to sell their property to attempt and they purported to sell the property, and to collect a debt for Wells Fargo Home Mortgage or Freddie Mac.

## LEGAL ANALYSIS

Defendant seeks to dismiss the case based on the defense that the "present right to possession of the property" was established by the original loan documents and asserted that the right to proceed arose from an alleged default.  However as stated above, there was no default letter sent to the Plaintiffs by the lender pursuant to the terms of the mortgage. Thus the pleadings establish that there could be no acceleration nor exercise of the statutory power of sale pursuant to the loan documents, since there was no declaration of default.  A mere delinquency does not provide the owner of the mortgage with the right to foreclose, without a valid default letter.  This is the first step in the process of foreclosure, followed by an acceleration notice and finally a Notice of Sale pursuant to R.I.G.L. 34-27-4.

Defendant cites *Speleos v. BAC Home Loans Servicing LP*, 824 F. Supp 2 d 226 (D. Mass, 2011).  However *Speleos* can be readily distinguished.  In *Speleos*, that Plaintiff had filed suit against a law firm claiming that it had violated a duty to investigate whether that Plaintiff was eligible for HAMP prior to commencing a nonjudicial foreclosure.  That case also claimed liability arising from the FDCPA

general section 1692f, with no particular facts alleged.  However the Court in

*Speleos* also added:

> Defendant may, of course, still be liable under § 1692f(6), which is
> specifically applicable to the enforcement of security interests. *See Maynard
> v. Cannon, P.C.,*650 F.Supp.2d 1138, 1142-43 (D.Utah 2008) (holding that
> law firm engaged solely to initiate a nonjudicial foreclosure by enforcing the
> security interest was subject only to § 1692f(6)). That subsection prohibits
> enforcing such an interest where there is "no present right to possession of
> the property claimed as collateral." § 1692f(6)(A). The question is thus
> whether Orlans Moran foreclosed on the Property when there was no present
> right to possess it.

This is a section of the FDCPA which Plaintiffs cited in this Memorandum

in support of their claim for relief in the complaint. *Speleos* also did not involve

any claims for Harmon acting as a debt collector to collect a debt and providing the

Plaintiffs for information to find out how much they owed and how to pay Harmon

on behalf of Wells Fargo Home Mortgage. Once Harmon acted as a debt collector,

it became liable for any claims, arising from that conduct for commencing a

foreclosure without a valid default letter.

Defendant also cites the case of *Lippincott v.JPMorgan Chase Bank, N.A.*

14-14400 (D.MA., July 16, 2015).  In that case, a pro se Plaintiff had merely

made general allegations against Harmon and Chase with no specific allegations

regarding the inability to take or threaten non judicial action to effect

dispossession in connection with the enforcement of a valid security interest,

absent allegations of inaccurate or deceptive information or action. However it

was alleged that Harmon did in fact act deceptively when it sent the R.I.G.L. 34-27-4 notice without a default letter having been sent pursuant to the terms of the mortgage. In *Lippincott*, all the Plaintiff alleged were the following general, vague and insufficient and factually unsupported assertions:

> FDCPA (Fair Debt Collection Practices Act) Violations
>
> Harmon Law Offices letter dated July 17, 2014 (Exhibit E) states at the bottom: "PLEASED BE ADVISED THAT THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT AND THAT ANY AND ALL INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE."
>
> According to the FDCPA J.P. Morgan Chase Bank, N. A. had no standing at time of alleged sale because they are a debt collector.
>
> Fair Debt Collection Practices Act states:   a debt collector can not foreclose on a  property.
>
> This letter stands as violation in the record of the Fair Debt Collection Practices Act

These were insufficient allegations totally dissimilar  from this case. Thus

*Lippincott* can be distinguished from the present case, due to its lack of

specific factual allegations.

Defendant has also cited *Stagikas v. Saxon Mortgage Services, Inc*., 795 F.

Supp. 2d 129 (D.MA., 2011).  In *Stagikas*, the Plaintiff sued the loan servicer

contending that there was a violation of 1692f on the grounds that the loan servicer

had no present right of possession due to the existence of a trial modification.

However in *Stagikas*, the trial modification had expired six months earlier.  Thus

the Court found that by its own terms the servicer had the right to commence a non

judicial foreclosure. This factual situation varies from *Stagikas*. Plaintiffs have

alleged without dispute that the Plaintiffs at the time of the March 2, 2015 Notice

of foreclosure letter pursuant to R.I.G.L 34-27-4, no default letter pursuant to the

terms of the mortgage had been sent to them. Thus there was a factual basis for the

1692f(6) claim against Harmon.

Another case cited by Harmon can also be distinguished. The case of *Bryant*

*v. Wells Fargo Bank, Nat.Ass'n* 861F. Supp 2d (E.D., N.C., 2012) contained no

factual assertions against the law firm which was granted the motion to dismiss.

The Court adopted the Report and Recommendation of the Magistrate Judge,

which had made the following findings:

> CLAIM IV VIOLATION OF FAIR DEBT COLLECTION PRACTICES
> ACT
> 102. All previous and subsequent paragraphs are hereby incorporated by
> reference above and set forth in full herein.
> 103. Defendants communicated credit information about Plaintiff which
> Defendants knew, or should have known, to be false.
> 104. Defendants have engaged in activities in an attempt to collect a
> purported debt which include, but are not limited to, locking Plaintiffs out of
> their Property, converting Plaintiffs' personal property, engaging in
> numerous improper tactics in correspondence, and pursuing a litigation with
> no basis in law to do so.
> 105. Defendants failed to abide by the terms of the Fair Debt Collection
> Practices Act, 15 U.S.C. § 1692 et seq. and, accordingly, Plaintiffs are
> entitled to actual damages in an amount to be proven at trial, statutory
> damages, and their reasonable attorney fees.

The pleadings in *Bryant* are significantly distinct from this case and should not be considered in any evaluation of the Plaintiffs' pleadings.

Other cases support the Plaintiffs' position in this matter.  In *Shaw v BAC Home Loans Servicing*, LP 10-11021 (D. MA., 2013), the District Court denied a Motion to Dismiss when the loan servicer went forward with a foreclosure. Plaintiff in that case asserted that it was illegal because of the pending modification request.  The Court held:

> Shaw states that under the FDCPA, BAC is a debt collector and is prohibited from making a "threat to take any action that cannot legally be taken" and "may not use unfair or unconscionable means to collect or attempt to collect any debt." D. 31 ¶¶ 52-56. Shaw alleges that "[BAC] violated the [cited] sections of the FDCPA because it has threatened, and indeed has scheduled, the foreclosure sale of Plaintiff's home, which action is illegal since it would be in violation of [Massachusetts regulation]." D. 31 ¶ 57. Although this allegation is primarily directed toward the alleged failure to consider her for a loan modification, in light of the Court's allowance as to the claim for wrongful foreclosure, the Court cannot conclude that Shaw's alleged facts supporting her claim of wrongful foreclosure may not also entitle her to relief on her FDCPA claim, where the Court notes that Shaw bases her FDCPA claim on an "illegal" foreclosure and where Shaw has stated sufficient factual allegations to allow that claim to go forward. Accordingly, the Court declines to dismiss this claim.

In *Wilson v Draper & Goldberg*, 443 F. 3d 373 (4th Cir., 2006) the Fourth Circuit held that the FDCPA applies to lawyers conducting a nonjudicial foreclosure, in a case where the attorneys advised the mortgagors the amount that was needed to reinstate. The Court held:

> Defendants' argument [that foreclosure was not within FDCPA], if accepted, would create an enormous loophole in the Act immunizing any debt from

coverage if that debt happened to be secured by a real property interest and foreclosure proceedings were used to collect the debt.[251]

The FDCPA applies to "debts" defined as:

The term "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

In this case Harmon notified Plaintiffs that their debt was accelerated and that they could make payments by contacting Harmon. Thus the language of the mortgage and *Wilson* suggest that the Motion for Judgment of the Pleadings should be denied.

In *Manson v GMAC*, 08-12166 (D.MA., 2012), the District Court denied a Motion to Dismiss a class action on FDCPA grounds despite the position of Harmon Law Offices, P.C. assertion of the *Speleos* holding. The Court pointed out the holding of Speleos which was ignored Harmon firm:

With respect to the FDCPA claims, the defendant law firms contend that "foreclosure is not debt collection."[37] Law Firm Defs.' Opp'n at 12. They rely on *Speleos v. BAC Home Loans Servicing, L.P.,* 2011 WL 4899982, (D. Mass. Oct. 14, 2011), for the proposition that the law firms "cannot be held liable under the general provisions of § 1692(f) because [they were] not collecting a debt but rather enforcing a security interest." *Id.* at *6. Plaintiffs, for their part, argue that when *Speleos* is read further, defendants' argument collapses.

Defendant may, of course, still be liable under § 1692f(6), which is specifically applicable to the enforcement of security interests. See *Maynard v. Cannon, P.C.,* 650 F. Supp. 2d 1138, 1142-43 (D. Utah 2008) (holding that law firm engaged solely to initiate a nonjudicial foreclosure by enforcing the security interest was subject only to § 1692f(6)). That subsection prohibits enforcing such an interest where there is "no present right to possession of the property claimed as collateral." § 1692f(6)(A). The question is thus whether HarmonMoran foreclosed on the Property when there was no present right to possess it.

*Id.* Here, as noted in *Speleos,* the law firms were attempting to enforce a security interest when they lacked authority to do so. "A court should look to state law requirements to determine whether there was a present right to possession under the FDCPA." *Id.,* quoting *Revering v. Norwest Bank Minn., N.A.,* 1999 WL 33911360, at *5 (D. Minn. Nov. 30, 1999). General Laws ch. 244, §14, is conclusive on the issue: if a violation of the statute occurred then the law firm defendant in question had no present right to possession, and the FDCPA protections are triggered. The circle, however, remains unbroken. *If* a section 14 violation occurred, *then* the law firm whose client is implicated may be liable under the FDCPA.

In short, the Defendant's position fails due to the specific pleading in the Plaintiff's complaint of liability under 1692f(6)(A) and 1692e.

## THE PLAINTIFFS HAVE MET THE PLEADING REQUIREMENTS OF ASHCROFT V. IQBAL

The First Circuit has interpreted the holding of the United States Supreme Court in *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) for analysis of FRCP 12(b)(6) motions.  The Supreme Court in *Iqbal* had stated:

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.,* at 570, 127 S.Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged. *Id.,* at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

The First Circuit in *Rodriguez-Vives v. Puerto Rico Firefighters* (1st Cir., January 8, 2014) held:

We emphasize that this case is on appeal of a 12(b)(6) motion, not a motion for summary judgment. *HN12* "Although a plaintiff must plead enough facts to make entitlement to relief plausible in light of the evidentiary standard that will pertain at trial . . . she need not plead facts sufficient to establish a prima facie case." Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 54 (**1st Cir.** 2013).

The First Circuit thus confirmed that even if a Plaintiff makes a specific factual allegation, that merely lacks some surrounding context, the claim will be sufficient to survive a motion to dismiss.  Thus for purposes of the Motion, all actual allegations in Plaintiffs' complaint must be accepted by the Court as true.

The Court also reiterated the principle that the First Circuit had previously stated in similar principles in  Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 54 (1st Cir. 2013):

The prima facie case is an evidentiary model, not a pleading standard. For this reason, the interaction between the prima facie case and the plausibility standard crafted by the  [**2] Supreme Court in Bell Atlantic Corp. v. Twombly,  created some confusion. We now resolve that confusion and hold that *HN1* the prima facie case is not the appropriate benchmark for determining whether a complaint has crossed the plausibility threshold. Accordingly, that aspect of the district court's decision must be annulled and the case remanded for further proceedings.

Plaintiff has made specific factual assertions of plausible facts which are deemed to be true for purposes of the Motion to dismiss, which will demonstrated

in the responses to each of the aspects of the Motion to Dismiss.

## CONCLUSION

Plaintiffs have pleaded concise violations of the FDCPA by Harmon, which were specific as to time and content of the violations.  The have alleged actual damages as to legal fees incurred to seek legal redress against an improper non- judicial foreclosure without a valid default notice.  Plaintiffs do not have to prove ill will or bad intentions on the part of Harmon.  The statute is not based on negligence, as illegal actions without need to prove negligence or malice suffice.  The FDCPA is a strict liability standard, as to which Plaintiffs have made specific allegations.  They are also prepared to file an Amended Complaint, as indicated above, in the event that this Court determines that more specific allegations are necessary.

For these reasons, the Motion for Judgment on the Pleadings should be denied.

Respectfully submitted,

June 13, 2016                                     /s/ John B. Ennis
                                                 JOHN B. ENNIS, ESQ. #2135
                                                 1200 Reservoir Avenue
                                                 Cranston, Rhode Island 02920
                                                 (401) 943-9230
                                                 jbelaw@aol.com

<u>CERTIFICATION</u>

I hereby certify that I emailed a copy of the within Memorandum of Law to

the following on the 13th day of June, 2016.

David E. Failkow, Esq.
K & L Gates, LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111
David.fialkow@klgates.com

Scott C. Owens, Esq.
Harmon Law Offices, PC
150 California Street
Newton, MA 02458
sowens@harmonlaw.com

/s/ John B. Ennis _____